UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  11-60462-CV-COHN

NORTHERN INSURANCE CO. OF
NEW YORK, a/s/o LESLIE GRAY,

Magistrate Judge Seltzer

      Plaintiff,

vs.

CONSTRUCTION NAVALE BORDEAUX,
d/b/a LAGOON,

      Defendant.
_____/

## ORDER GRANTING MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss for Lack of Personal Jurisdiction [DE 8], Plaintiff's Response in Opposition [DE 32], and Defendant's Reply [DE 35].  The Court has carefully considered the motion, response, and reply, and is otherwise fully advised in the premises.

      This case involves a dispute between Northern Insurance Co. ("Plaintiff"), as subrogee of its insured, Leslie Gray, and Construction Navale Bordeaux ("Defendant"), manufacturer of a motor vessel owned by Gray.  Plaintiff contends that Defendant (doing business as "Lagoon"), a company who designs, manufactures, and sells motor vessels, including the one purchased from a dealer by Mr. Gray, is responsible for the damages to the vessel.  Defendant, a French corporation, moves to dismiss this action for lack of personal jurisdiction [DE 8]. On April 4, 2011, the Court granted Plaintiff's unopposed motion for a period of sixty days to complete jurisdictional discovery and to respond to the motion to dismiss [DE 13].  After an additional seven day extension to complete this discovery, the parties finished briefing on the motion to dismiss on June

21, 2011.

## I.  BACKGROUND

Plaintiff, a New York corporation, sues Defendant, a French corporation, in Florida for damages to the vessel "Tabby" occurring off the waters of Florida.  Most of the facts in this dispute are uncontested.  Leslie Gray, Plaintiff's insured, is a resident of Rhode Island who bought the vessel in 2004 from Sound Catamarans, LLC, a vessel dealer in Connecticut.  Affidavit of Leslie Gray [DE 32-4].  Gray received a warranty from the dealer that came from Defendant Lagoon.  In 2006, Gray made a warranty claim under the Lagoon express warranty through Sound Catamarans, though the work was performed by a marina in Rhode Island.  In late 2007, Gray relocated the vessel to Miami Beach, Florida.  On December 6, 2007, while on a voyage from Miami Beach to Key West, the vessel's bilge pump caught fire, resulting in damage to the vessel.  Gray delivered the vessel to another Lagoon dealer, Catamaran Sales, Inc. ("CATCO"), based in Fort Lauderdale, Florida.  CATCO provided Gray with another copy of the Lagoon warranty, and is a Lagoon warranty repair facility.  Plaintiff paid Gray $247,832.13 for the damage to the vessel.

Defendant Lagoon is a French company with all of its employees working in France.  Defendant does not have an office in Florida, is not registered with the Florida Department of State, holds no licenses, and does not own any property or bank accounts in Florida.  Declaration of Jean-Louis Chaput [DE 8-1].  Defendant has no employees, agents, or sales representatives in Florida, derives no income from Florida, and pays no taxes to the State of Florida.  Id.  Defendant does not directly sell any boats to consumers in the United States, let alone in Florida.  Exhibit 2 to Plaintiff's

Response, Defendant's Answers to Interrogatories at p. 3 [DE 32-2]. Instead, Defendant sells vessels to independent dealers, one of which (CATCO) is located in Florida. These dealers also sell vessels from any other manufacturers. Since 2009, Defendant has sold 20 boats to CATCO in Florida. Id. 7. Defendant attends two boat shows each year in Florida, id. at 5-6, advertises in some industry print publications in the United States, Exhibit 3 to Plaintiff's Response [DE 32-3], and has a "Lagoon" trademark registration from the United States Patent and Trademark Office, Exhibit 5 to Plaintiff's Response [DE 32-5]. Plaintiff served the summons in this action upon Defendant's Commercial Sales Director in Florida while he was attending the Miami International Boat Show. Affidavit of John Van Steenkiste, Exhibit 1 to Plaintiff's Response [DE 32-1].

## II.  DISCUSSION

### A. Personal Jurisdiction

"A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements." Licciardello v. Lovelady, 544 F.3d 1280, 1283 (11th Cir. 2008) (citing Fed. R. Civ. P. 4(e)(1)). The Court must apply the Florida long-arm statute as the Florida Supreme Court would. Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V., 701 F.2d 889, 890-91 (11th Cir. 1983). Further, the Court must strictly construe the long-arm statute. Id.

When the district court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, the plaintiff must establish a *prima facie* case of personal jurisdiction over a nonresident defendant. See Cable/Home

Communication Corporation v. Network Productions, Inc., 902 F.2d 829, 855 (11th Cir. 1990).  A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict.  E.g. Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988) (citations omitted).  "The plaintiff bears the burden of proving 'by affidavit the basis upon which jurisdiction may be obtained' only if the defendant challenging jurisdiction files 'affidavits in support of his position.'" Posner v. Essex Ins. Co., 178 F.3d 1209, 1214 (11th Cir. 1999) (quoting Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989)).  Here, Defendant has filed an affidavit to support its argument that this Court lacks jurisdiction over Defendant.  See Chaput Declaration.  Where the parties' affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff.  Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 255 (11th Cir. 1996) (citing Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir.1990)).

Plaintiff contends that Defendant is subject to personal jurisdiction in Florida based on personal service executed upon Lagoon's Commercial Sales Director while he was in Florida on business, and upon various sections of Florida's long-arm statute, including general personal jurisdiction due to substantial activity and specific jurisdiction based upon operating a business and breaching a contract in Florida.

### 1.  Service Upon Defendant while in Florida

Plaintiff argues that because it served a director of Defendant while he was physically present in Florida, the Court can find personal jurisdiction without further inquiry.  Defendant responds by stating that the case law on which Plaintiff relies only pertains to individuals and not corporations.  In Burnham v. Superior Court of California, 495 U.S. 604, 619 (1990), the United States Supreme Court stated that "jurisdiction

4

based on physical presence alone constitutes due process."[1]  However, the main plurality opinion's only reference to foreign corporations appears to state that the Court expresses no views "with respect to these matters," – presumably whether service upon a corporate officer is sufficient for jurisdiction without a contacts-based analysis.  495 U.S. at 610, n.1.  The case the Supreme Court mentions in this footnote, Perkins v. Benguet Cons. Mining Co., 342 U.S. 437, 447-48 (1952), did not hold that service in a state upon an officer of a corporation obviates the need to do a minimum contacts analysis.

The Florida cases that support the notion that jurisdiction can be solely based upon physical presence also involve individuals, not corporations.  Garrett v. Garrett, 668 So. 2d 991, 994 (Wells, J. concurring); Durkee v. Durkee, 906 So. 2d 1176, 1177 (Fla. Dist. Ct. App. 2005); Keveloh v. Carter, 699 So. 2d 285, 288 (Fla. Dist. Ct. App. 1997).  As Defendant asserts, Plaintiff has not put forth any published opinion that holds that service upon a corporate officer or director in the United States establishes personal jurisdiction over a foreign corporation without regard to a minimum contacts analysis.  Therefore, the Court will engage in the traditional two-part personal jurisdiction analysis described above.

### 2. General Jurisdiction

Florida courts have general jurisdiction over defendants under § 48.193(2), Florida Statutes, provided the defendant:

> is engaged in substantial and not isolated activity within this state, whether

---

[1] Two plurality opinions receiving four votes each reached this result for different reasons.  Burnham, 495 U.S. at 637-38 (Brennan, J. concurring)

> such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. § 48.193(2).

Plaintiff bases its argument for general jurisdiction upon Defendant's alleged control over CATCO, an independent dealer. Pursuant to Fla. Stat. § 48.181(3),

> Any person, firm, or corporation which sells, consigns, or leases by any means whatsoever tangible or intangible personal property, through brokers, jobbers, wholesalers, **or distributors** to any person, firm, or corporation in this state is conclusively presumed to be both engaged in substantial and not isolated activities within this state and operating, conducting, engaging in, or carrying on a business or business venture in this state.

West's F.S.A. § 48.181(3) (emphasis added). Florida courts have interpreted this subsection to mean that a plaintiff must show that the defendant "has some degree of control over the broker or control over the [property] in the hands of the broker." Dinsmore v. Martin Blumenthal Associates, Inc., 314 So. 2d 561, 566 (Fla. 1975). Defendant relies on the general statements of its Vice-President that Lagoon does not exert any right of control over the actions of CATCO, or any dealers, and that CATCO sells other vessels. Chaput Declaration at ¶¶ 22, 39. Plaintiff, however, cites to various specific provisions in the distribution contract between CATCO and Lagoon which do indicate some control by Lagoon over the manner in which CATCO sells Lagoon's products in Florida and control over the vessels themselves. Exhibit 1 to Chaput Declaration [DE 8-1] (hereinafter, "Distribution Contract"). For example, Lagoon retains title to the products until it has received payment in full for a vessel. Distribution Contract, ¶ 3.6 at 12. Lagoon controls the geographic territory of CATCO, the amount of money CATCO spends on advertising and promotion, the minimum inventory and

6

age of the Lagoon vessels it sells, the manner in which the vessels are presented to customers, the communication of terms of Lagoon's warranty, the prices of the vessels, the minimum sales quota of CATCO for Lagoon vessel's, and CATCO must "maintain the necessary facilities, personnel and tooling to carry out such [warranty] services [which] Lagoon may verify. . . in order to ensure quality." Id. ¶ 2 (definitions); ¶¶ 2.2-2.4, 2.7, 3.3, 4, 8.1.

The Court concludes that Plaintiff has sufficiently shown a prima facie case of control to satisfy § 48.181(3), which in turn provides a conclusive presumption that § 48.193(2) and § 48.193(1)(a) of the long-arm statute are satisfied. This evidence thus distinguishes this decision from this Court's ruling in Bluewater Trading LLC v. Fountaine Pajot, S.A., 2008 WL 2705432 (S.D. Fla. 2008), aff'd, 335 Fed. App'x. 905, 907 (11th Cir. 2009). In that action, the plaintiff did not raise § 48.181(3), and the Court of Appeal stated that the evidence did not show that the French manufacturer controlled its Florida distributor in its sales or warranty service.

### 3. Specific Jurisdiction

Plaintiff contends that Defendant is subject to specific jurisdiction under Florida's long-arm statute because it operates a business and breached a contract in Florida. Section 48.193 states:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state <u>for any cause of action arising from</u> the doing of any of the following acts:
>
> (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

>  (g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

As discussed in the prior section of this Order, Plaintiff has shown that Lagoon had sufficient control over CATCO under § 48.181(3) to conclusively presume that § 48.193(1)(a) applies.

Plaintiff further contends that Lagoon breached a contract by failing to perform acts required by the contract to be performed in Florida.  The Court disagrees.  Plaintiff does allege that Lagoon issued an express warranty and breached its warranty by failing to repair the Tabby's defects, but does not allege that the breach took place in Florida.  Complaint, ¶¶ 33, 34, 71.  Plaintiff also alleges that the repairs performed by CATCO in Florida were done in compliance with the Lagoon warranty, and that Lagoon "issued warranties in Florida."  Id. ¶¶ 42-44, 46.  However, under the Distribution Contract, the Distributor is the one responsible to the customer for warranty repairs.  Lagoon is responsible under certain conditions for payment for the repairs to the Distributor, not the customer.  Distribution Contract, Article 8 [DE 8-1 at p. 14-15].  There also is no requirement that the repairs be done in Florida.  Chaput Declaration ¶ 45.  While the terms of the Distribution Contract require dealers to perform their own repairs on boats they sell "free of charge," dealers are required to undertake all repairs on any Lagoon-built product, whether or not they sold the boat.  Distribution Contract, ¶¶ 8.1-8.2.  In the latter circumstance, which would apply in this action, Lagoon is to repay the dealer.  Thus, Plaintiff has not shown that Lagoon breached a contract with Leslie Gray by failing to perform an act required to be performed in Florida.

8

### B. Due Process

Having concluded that Defendant's contacts with Florida subject it to general jurisdiction under Florida's long-arm statute, the Court must now evaluate whether Defendant's contacts meet the requirements of due process. The due process component of personal jurisdiction involves a two-part inquiry. In the first prong, the Court must consider whether Defendant engaged in minimum contacts with the state of Florida. In the second prong, the Court must consider whether the exercise of personal jurisdiction over Defendant would offend "traditional notions of fair play and substantial justice." Cronin v. Washington Nat'l Ins. Co., 980 F.2d 663, 670 (11th Cir. 1993) (citing Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation, 326 U.S. 310, 316 (1945); Madara, 916 F.2d at 1515-16).

### 1. Minimum Contacts

Minimum contacts involve three criteria: First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws. Finally, the defendant's contacts within the forum state must be such that it should reasonably anticipate being hailed into court there. Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 631 (11th Cir. 1996). The Supreme Court recently reiterated the importance of the "purposeful availment" requirement. J. McIntyre Machinery, Ltd. v. Nicastro, — S.Ct. —, 2011 WL 2518811, * 5 (June 27, 2011).[2]

---

[2] In Nicastro, this point of law was supported in the lead opinion issued by four justices, and a separate concurrence by two more justices.

Although Lagoon has no offices, telephone, bank account, or property of any kind in the state of Florida, except a few vessels waiting for sale by CATCO, that may or may not still be titled to Lagoon, its contacts are related to Plaintiff's cause of action for violation of federal warranty law regarding a vessel sold by a dealer of Lagoon. It is important to note that the vessel in question was not sold in Florida, and not sold to a Florida resident.  However, the vessel incurred damage in Florida's waters and was repaired in Florida.  The only ongoing contacts with Florida are two trips per year for international boat shows, and national advertising in print media that was not particularly targeted at Florida.  The Court concludes that although these contacts do provide evidence of purposeful contact with the state, they do not lead to the finding that Lagoon should reasonably anticipate being hailed into court here over this incident.

Plaintiff principally relies upon the stream of commerce theory.  However, "something more" than merely placing a product into the stream of commerce is required for personal jurisdiction. Nicastro, 2011 WL 2518811, *10 (Breyer, J. concurring) (quoting Asahi Metal Industry Co. v. Superior Court of Cal., 480 U.S. 102, 111-12 (1987) (plurality opinion of Justice O'Connor).  The critical question is whether Plaintiff has met that burden in this case. Plaintiff recites the 20 sales in Florida over approximately the last 2.4 years, the control over how the independent dealer makes those sales, the appearance at six trade shows in Florida (two per year), and the industry advertising to be the "something more" that is required where the vessel in question just happened to break down while in Florida's waters.  In Nicastro, the allegations in support of personal jurisdiction rejected by the Supreme Court were less than present here, consisting of sales from independent distributors of no more than

10

four machines in the forum state; attendance at trade shows in the United States but not in the forum state; defendant held United States patent for the technology in the machine; and the U.S. distributor structured its advertising and sales efforts in accordance with the defendant's direction and guidance whenever possible.  2011 WL 2518811, *5.  Though the contacts are greater than in Nicastro, upon a review of the record, this Court concludes that Plaintiff has not sufficiently shown that Lagoon should reasonably anticipate being hailed into Florida courts over a warranty dispute for a vessel sold in another state to a resident of another state.

### 2.  Traditional Notions of Fair Play and Substantial Justice

To complete the analysis, the Court will also address the factors to decide whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice."  These factors are: 1) the burden on the defendant in defending the lawsuit; 2) the forum state's interest in adjudicating the dispute; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and, 5) the shared interest of the states in furthering fundamental substantive social policies. Cronin, 980 F.2d at 671 (citing Asahi Metal, 480 U.S. at 113; Madara, 916 F.2d at 1517).

As to the first prong of the due process component, the burden on a French company that sells vessels all over the globe to litigate in Florida is not overly burdensome.  With modern technology, travel is not as onerous as it once was, and Lagoon already sends representatives to Florida for trade shows.  As to the second prong, Florida has minimal social interest in the outcome of this litigation, as no parties

11

are Florida citizens and federal warranty law will largely control the outcome. Plaintiff, an out of state insurance company, presumably prefers Florida because of the location of CATCO's warranty repair records. The interstate judicial system may be better served if the matter were litigated in Connecticut, where the vessel was sold and the Lagoon warranty first presented to Plaintiff's insured, in a location next to both Plaintiff's home state of New York and its insured's home in Rhode Island.

Taking into account all of the factors for traditional notions of fair play and substantial justice, it is not clear that Florida is the best location for this lawsuit, though it is also not clear that asserting personal jurisdiction against Lagoon in Florida is at odds with these factors. As a result, the Court rests its decision that personal jurisdiction is not proper in this case upon the conclusion that Plaintiff has not sufficiently shown that Lagoon should reasonably anticipate being hailed into Florida courts over a warranty dispute for a vessel sold in another state to a resident of another state.

### III. CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction [DE 8] is hereby **GRANTED**;

2. Plaintiff's Complaint is **DISMISSED** for lack of personal jurisdiction;

3. The Clerk may close this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 11th day of July, 2011.

JAMES I. COHN
United States District Judge

Copies furnished to:
counsel of record

12